Bennie Stone **GOODEN**, Jr., etc., et al., **Plaintiffs-Appellees-Cross Appellants,**

v.

**MISSISSIPPI STATE UNIVERSITY, etc., et al., Defendants-Appellants-Cross Appellees.**

No. 73–2108.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1974.

Rehearing and Rehearing En Banc Denied Oct. 16, 1974.

A. F. Summer, Atty. Gen., Wm. A. Allain, First Asst. Atty. Gen., Ed Davis Noble, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for defendants-appellants.

Melvyn R. Leventhal, Jackson, Miss., Jack Greenberg, New York City, for plaintiffs-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

PER CURIAM:

Plaintiffs, three black students attending public school in Clarksdale, Mississippi, sued on behalf of a class comprised of "students throughout the State of Mississippi who are aggrieved by the policies and practices of the defendants complained of herein." The complaint,

filed February 14, 1972, alleged that "numerous private racially segregated schools and academies," as members of the Academy Athletic Conference, had been granted permission by Mississippi State University to use the University's gymnasium and facilities to hold basketball games on February 21–26, 1972. It was further asserted that this action provided state aid and encouragement to such member schools and thereby impeded the achievement of racially integrated public schools. Preliminary injunctive relief was sought to stop Mississippi State from allowing the tournament, and permanent injunctive relief was requested denying the Academy Athletic Conference the use of all facilities controlled by the Board of Trustees of Institutions of Higher Learning, which oversees the eight public four-year collegiate institutions in the state. The defendants were the president of Mississippi State University and the Trustees of the Institutions of Higher Learning. They answered admitting that permission had been given for the use of Mississippi State's facilities on February 21–26, but alleged that on the same day the complaint had been filed the Academy Athletic Conference withdrew its request, and the games had not been played on state property. A hearing consisting solely of statements and arguments of counsel, was held in February of the following year. The district judge made no findings of fact but issued this injunction on April 4, 1973:

> Defendant, Board of Trustees of Institutions of Higher Learning, is permanently enjoined from allowing or permitting gymnasiums, athletic fields, and other school facilities of all colleges and universities subject to its control or jurisdiction to be used for the holding of contests, activities and

programs sponsored by Academy Athletic Conference (also known as Academy Activities Commission of the Mississippi Private School Association), or its member schools, or any other private school which does not enroll black students; provided, however, that this shall not preclude any student, or group of students attending any private school from access to such facilities under defendants' control when such facilities are open to the general public on a nonexclusive, communal basis. Gilmore v. City of Montgomery, [473 F.2d 832 (CA 5, 1973) 1973].

Both parties appeal. Defendants seek to vacate the injunction. Plaintiffs protest the court's failure to award them attorneys fees. Defendants protest the issuance of the injunction as an imprudent exercise of the court's equitable power because (1) none of the circumstances present in *Gilmore* was shown to be present in this case, (2) no threat of similar requests or approvals in the future was shown, and (3) at the time of issuance the cause was moot. Plaintiffs contend that the court's action must be judged in light of its knowledge of the existence of a widespread network of private schools that pose a threat to the success of public school integration— knowledge which was gained from taking judicial notice of its own records in Norwood v. Harrison, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). They reason from this that it was permissible for the court to conclude that the Board of Trustees of Institutions of Higher Learning had an affirmative duty to adopt a negative policy forbidding use of all facilities under their supervision in the manner enjoined. Plaintiffs' cross-appeal claims that Section 718 of Title VII, 20 U.S.C. § 1617,[1]

---

1. Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin

in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the

applies and, coupled with the decisions in Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and Johnson v. Combs, 471 F.2d 84 (5th Cir. 1972), mandates the award of attorneys' fees in this case.

Because the Supreme Court granted certiorari in *Gilmore, supra*, 414 U.S. 907, 94 S.Ct. 215, 38 L.Ed.2d 145 (1973), and Bradley v. Richmond School Board, 412 U.S. 937, 93 S.Ct. 2773, 37 L.Ed.2d 396 (1973), the latter case relating to the applicability of Section 718, we withheld the disposition of the instant appeal pending its decisions in those cases, which have now been handed down. Gilmore v. Montgomery, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d — (1974); Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Even with the guidance provided, the central issue in this cause continues to be whether a controversy which would support injunctive relief remained after the withdrawal of the single private school request for use of public facilities.

Although the question for resolution on this appeal might be posed in terms of standing, i. e., did plaintiffs show an injury to themselves resulting from defendants' action;[2] or in terms of ripeness, i. e., did plaintiffs demonstrate a

realistic possibility that the actions of defendants would injure them;[3] or in terms of abuse of discretion, i. e., was the injunction unsupported or overbroad,[4] the issue here is most properly classified as raising the question of mootness, i. e., does the cause lack the concrete adverseness necessary to an Article III case or controversy?

This court has on several occasions this year held causes moot—when the allegedly offending action was rescinded, *see* Barron v. Bellairs, 5 Cir., 496 F.2d 1187 [1974] (new Georgia welfare statute enacted prior to entry of injunctive relief),—when the proof failed to show the complaining party was or would be injured by the challenged actions of the defendant, *see* National Lawyers Guild v. Board of Regents, 5 Cir., 490 F.2d 97 (injunction requiring use of college facility for meeting held moot where meeting date set had long gone by and no showing was made that required co-sponsorship by college dean had been sought or refused); and Merkey v. Board of Regents, 5 Cir., 493 F.2d 790 (where plaintiff was a non-student at the time of appeal and no student was shown to seek recognition for a college club, the action demanding recognition was moot—Judge Goldberg dissented), —and when the matter in controversy

prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. In Pevsner v. Eastern Air Lines, 493 F.2d 916 (5th Cir. 1974), we affirmed the dismissal for lack of standing of a class action claim by one who had been overcharged for an air line ticket, because the initial overcharge was placed on a Bank Americard form and somehow got reduced to a proper charge before being billed to Pevsner.

3. In International Tape Manufacturers Association v. Gerstein, 494 F.2d 25 (5th Cir. 1974), an injunction against enforcement of a Florida tape piracy statute was vacated as granted in a controversy lacking ripeness where the proof failed to disclose how plaintiffs' members would be affected by the law or that any prosecution had been had or threatened under the law. *See n.* 8 comparing the doctrines of "standing", "ripeness" and "mootness".

4. Only Mississippi State University was shown to have acted, yet the injunction controlled the actions of the Board of Trustees at all eight collegiate institutions under their control which were located throughout the state. Its single action was a year prior to our decision in *Gilmore*. The district court never entered any order on the maintainability of this action as a class suit. Fed.R.Civ. P. 23(c). The effect on Clarksdale high school students of the proposed but aborted Starkville basketball tournament was not demonstrated except by the unarticulated inferences which might be drawn from facts established in the record from Norwood v. Harrison, *supra*. The asserted affirmative duty of the Board to adopt a policy forbidding the grant of exclusive use of facilities to private school students is devoid of support in the record. *See n.* 10 to *Gilmore, supra*, 417 U.S. at 570, 94 S.Ct. 2416.

**444**

has become passe, *see* De Simone v. Lindford, 5 Cir., 494 F.2d 1186 (request for injunctive relief pending completion of administrative review held moot upon final agency decision); United States Servicemen's Fund v. Killeen Independent School District, 5 Cir., 489 F.2d 693 (right to use a high school auditorium for a "Counter-USO Show" by Viet Nam war protesters held moot after the conflict ended); and Hollon v. Mathis Independent School District, 5 Cir., 491 F.2d 92 (injunction suspending a school rule against married athletes mooted by plaintiff's graduation). Reference to these holdings and the authorities they cite suffices for articulation of the underlying legal principles.

■ Assuming, without deciding, that the single instance of collegiate level action which never came to fruition may have supported an injunction against the officials of that college prior to the withdrawal of the private school request, or that other instances of aid or support to private schools in violation of plaintiffs' rights might have been proven and supported injunctive relief, a full year intervened without any indication of similar subsequent actions or threats to act by any of the defendants. No proof was made that permission of this sort had ever previously been given. No controversy between adverse interests was demonstrated to exist.[5]

■ Assuming, again without deciding, that Section 718 may be applicable in a moot case, no finding that these proceedings were necessary to bring about compliance with statutory or constitutional rights was made or could be supported by this record.[6] Without such a finding, Section 718 affords no basis for a fee award. The cross-appeal is without merit.

The injunction order appealed from is vacated and the cause is remanded with directions to the court below to dismiss the action as moot.

Vacated and remanded.

---

5. Time may alter any relationship. Hence even permanent injunctive orders must continue to find justification in present conditions. Today, the Supreme Court's decision in *Gilmore* has· so far clarified the law in this area that if any particle of the subject matter of the present action, which we hold became moot long ago, did remain justiciable, it has become moot now.

6. As a part of the permanent injunction order the district court simply recited, "Plaintiffs' motion for an award of attorneys' fees is hereby denied."