Frank J. ROBINSON et al., Plaintiffs-Appellees,

v.

COMMISSIONERS COURT, ANDERSON COUNTY, and the Honorable N. R. Link, County Judge, Anderson County, Texas, Defendants-Appellants.

No. 74–1766.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1974.

---

93 S.Ct. 2332, 37 L.Ed.2d 314; Avery v. Midland County, 1968, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45. Nor, unfortunately, is unconstitutional dilution of voting rights only a very old part of our history. *See, e. g.*, Graves v. Barnes, W.D.Tex.1974 (3 judge), 378 F.Supp. 640. Caesar found Gaul divided into three parts. Here we are confronted with a County Commissioners Court which has cut the county's black community into three illogical parts in order to dilute the black vote in precinct elections, acting as a modern Caesar dissecting its private Gaul. Such apportionment poisons our representative democracy at its roots. Our constitution cannot abide it.

The district court ordered reapportionment by a prescribed plan, and we affirm its decision. We are always reluctant to displace apportionment decisions from the legislative hands to which they are ordinarily entrusted; our reluctance in this case is overcome by our profound disappointment in the irresponsibility of the exercise to which the local legislative body has devoted itself.

I

On December 21, 1973, Plaintiffs-Appellees Frank J. Robinson, Rodney Howard, and Timothy S. Smith, black residents and registered voters of Anderson County, Texas, initiated this suit in the Federal District Court for the Eastern District of Texas against the Commissioners Court and the County Judge of Anderson County (hereinafter Commissioners Court), charging that the then existing apportionment of Anderson County into election precincts was constitutionally unsound under the Fourteenth and Fifteenth Amendments. The Commissioners Court, presided over by the County Judge, is the governing body of Anderson County and is invested with statutory responsibility for districting. Texas Const. Art. 5 Sec. 18, Vernon's Ann.St.

After a January 30, 1974, hearing on plaintiffs' motion for a preliminary in-

---

Richard Brooks Hardee, Tyler, Tex., Jerry L. Calhoon, Billy H. Gragg, Palestine, Tex., for defendants-appellants.

David R. Richards, Austin, Tex., for plaintiffs-appellees.

Before GOLDBERG, GODBOLD and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This case results from a gerrymander of precinct lines in Anderson County, Texas, to dilute the black vote in County Commissioner elections. Unfortunately, the disrespect of voting rights is not a recent innovation in county government in Texas. *See generally*, Graves v. Barnes, W.D.Tex.1972 (3 judge), 343 F. Supp. 704, aff'd in part sub nom. White v. Regester, 1973, 412 U.S. 755,

junction, the district court entered an order on February 9, 1974, postponing deadlines for the party primaries preceding the Anderson County Commissioners general election. On February 9, the Court also entered an order joining as Defendants Louise C. Graser, Democratic Chairwoman of Anderson County, and Billy Gragg, Republican Chairman. These added defendants were served February 20, 1974, with process requiring an answer within twenty days. On March 5, 1974, the district court held a hearing on the merits, at which the plaintiffs presented a proposed reapportionment plan. The defendant party chairpersons were not present at the March 5 hearing.[1] On March 15, the district court issued an opinion, concluding that the existing precinct lines in Anderson County constituted "a racially motivated gerrymander [prohibited by] Wright v. Rockefeller, 1964, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512, and Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, as well as an apportionment scheme operating to minimize or cancel out the voting strength of the black community, White v. Regester, 1973, 412 U.S. 755, 93 S.Ct. 2342, 37 L.Ed.2d 314; Whitcomb v. Chavis, 1971, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363." Accordingly, the district court entered an order enjoining the Commissioners Court from failing to reapportion the election precincts in a manner consistent with the plaintiffs' proposed plan, awarding costs and attorneys' fees against the Commissioners Court, and enjoining defendants Graser and Gragg from failing to postpone certain filing deadlines for the upcoming primaries. Gragg and the Commissioners Court appeal the district court's March 15, 1974 order.[2] The Commissioners Court argues that the district court was in error in concluding that the existing apportionment plan was constitutionally unsound, that the Commissioners Court was improperly denied an opportunity to submit an alternate plan or to be heard on the feasibility of the adopted plan, and that the reapportionment plan adopted by the district court constituted an impermissible gerrymander itself. Defendant Gragg argues that he was improperly enjoined without a hearing. We affirm the district court's reapportionment order; we dismiss Gragg's appeal as moot, and thus vacate the postponement order insofar as it binds him.

## II

According to 1970 census figures, which the trial court correctly relied upon as its best evidence of current population distribution, Anderson County contains a population of 27,789. Palestine, the county seat and most significant municipality, has a population of 14,525. Whites make up 20,737 (75%) of the total county population, blacks 6,972 (25%); in Palestine the population is 10,753 (74%) white, and 3,712 (26%) black. The area of greatest black concentration in the county lies in the southwest quadrant of the City of Palestine, within census enumeration districts 21, 22 and 23. Of the 2,219 residents within these census districts, 1,835 (83%) are black; thus, this concentration represents approximately 26% of Anderson County's total black population.

Anderson County is divided into four precincts, each of which elects one Commissioner to the County Commissioners Court. The County Judge is elected at large. Before 1969, one precinct included the entire of the City of Palestine with its half of the county population, and the remaining expanse of the county

---

1. Counsel for the plaintiffs advised the trial court that he had notified them of the hearing, but the quality and timing of that notification was not explored.

2. The District Court amended its March 15, 1974 order on March 21, 1974, and on March

22, 1974, to provide for tenure of current commissioners as representatives of the newly drawn precincts, to suspend residency deadlines, and to effect technical corrections in its March 15, 1974 order. The substance of these adjustments is not in controversy.

was divided among the three other precincts.

In 1969, the Commissioners Court reapportioned Anderson County on the basis of voter registration statistics. Each new precinct contained a part of Palestine. More significantly, the black concentration in Palestine was diced into three parts, each in a different new precinct. In September, 1973, the Commissioners Court modified its 1969 districting, effective January 1, 1974, but preserved the fragmentation of the black community along the same lines.

■■■■ Plaintiffs maintain that the black vote in Anderson County was unconstitutionally diluted by means of this apportionment.[3] The standards for decision in dilution cases are developed primarily in cases dealing with multimember districting. *See e. g.*, White v. Regester, 1973, 412 U.S. 755, 765–770, 93 S.Ct. 2332, 2339, 37 L.Ed.2d 314, 324–326; Whitcomb v. Chavis, 1971, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363; Burns v. Richardson, 1966, 384 U.S. 73, 88, 86 S.Ct. 1286, 1294, 16 L.Ed.2d 376, 388, Fortson v. Dorsey, 379 U.S. 433, 439, 85 S.Ct. 498, 501, 13 L.Ed.2d 401, 405; Turner v. McKeithen, 5 Cir. 1973, 490 F.2d 191; Zimmer v. McKeithen, 5 Cir. 1973 (en banc), 485 F.2d 1297. But

we have no hesitation in applying [those tests to] measure . . . the constitutionality of reapportionment plans involving only single-member districts. In each instance, we

are required to determine the same question, whether or not there has been an unconstitutional manipulation of electoral district boundaries so as to minimize or dilute the voting strength of a minority class or interest.

Howard v. Adams County Board of Supervisors, 5 Cir. 1972, 453 F.2d 455, 458 n. 2. We recognized in Zimmer v. McKeithen, *supra*, 485 F.2d at 1305 that "[t]he Supreme Court has identified a panoply of factors, any number of which may contribute to the existence of dilution." Some of these are applicable in their detail only in the context of multimember districting. The most significant and general factors also obtain in cases such as the matter at bar, however, where the dilution of a racial group's voting strength has been arranged by shifting single-member precinct boundaries. Thus,

[w]here a minority can demonstrate a [legal, customary, or practical] lack of access to the process of slating candidates, the unresponsiveness of legislators to their particularized interests, a tenuous state policy underlying the preference for [the established] districting, or that the existence of past discrimination in general precludes the effective participation in the election system, a strong case is made. . . . The fact of dilution is established upon proof of the existence of an aggregate of these factors. The Supreme Court's recent pronounce-

---

3. In Howard v. Adams, 5 Cir. 1972, 453 F.2d 455, 457–458 we recognized that

to establish the existence of a constitutionally impermissible redistricting plan, in the absence of malapportionment, plaintiffs must maintain the burden of proving (1) a racially motivated gerrymander, or a plan drawn along racial lines, Wright v. Rockefeller, 1964, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512; Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110; Sims v. Baggett, M.D.Ala. 1965, 247 F.Supp. 96, *or* (2) that ". . . designedly or otherwise, a[n] . . . apportionment scheme, under the circumstances of a particular case, would

operate to minimize or cancel out the voting strength of racial or political elements of the voting population." Burns v. Richardson, 1966, 384 U.S. 73, 88, 86 S.Ct. 1286, 1294, 16 L.Ed.2d 376. *See* Whitcomb v. Chavis, 1971, 403 U.S. 124, 143–144, 149, 91 S.Ct. 1858, 29 L.Ed.2d 363. *Accord*, Zimmer v. McKeithen, *supra*. These two categories of invalidity are, of course, not mutually exclusive. We need not explore here the extent of their overlap in single member district cases such as that at hand; and we pretermit consideration of whether Gomillion v. Lightfoot alone would resolve this case.

ment in White v. Regester, *supra*, demonstrates, however, that all these factors need not be proved in order to obtain relief.

*Id. See also* Turner v. McKeithen, 5 Cir. 1973, 490 F.2d 191, 194.

■■■ These standards compel the conclusion that the district court was correct in ruling that the black vote in Anderson County was unconstitutionally diluted under the Commissioners Court's apportionment. To begin with, we find sufficient evidence to support the district court's findings that in a general but realistic way the voting strength of the black community in Anderson County "continues to suffer from the effect of oppressive and restrictive voting legislation and racial discrimination generally in the State of Texas. *See* White v. Regester, [*supra*, and that] the Commissioners Court of Anderson County has been generally unresponsive to the needs and interests of the black community . . . ." Specific demonstrations in the record include maintenance of segregation in public schools until 1967, and in other public facilities until 1963, summary dismissal of the county's black home demonstration agent, and abolition of that agency office, appointment of a juvenile officer who had been forced out of his previous position as deputy sheriff in response to a racial incident. Significantly, while blacks have achieved some recognition in Palestine and School Board politics, no black has ever been elected or appointed to county office, or appointed by the County Commissioners to any board or commission. *See generally* Leflore County Bd. of Election Comm'rs, *supra*, 502 F.2d at 624. Turner v. McKeithen, *supra*, 490 F.2d at 194–195; Zimmer v. McKeithen, *supra*, 385 F.2d at 1306.

The most crucial and precise instrument of the Commissioner's denial of the black minority's equal access to political participation, however, remains the gerrymander of precinct lines so as to fragment what could otherwise be a cohesive voting community. Despite the gross population disparities between precincts, no redistricting in any form was effectuated until 1969, when blacks in Anderson County finally organized and elected Plaintiff Smith the first black Democratic Precinct Chairman—and, thus, the first member of the policy-making County Democratic Executive Committee—in modern times. *Compare* Moore v. Leflore County Bd. of Election Commissioners, *supra*, 502 F.2d at 624. Under the County Commissioners' 1969 apportionment of Anderson County, the County was divided into precincts by two lines, running roughly north-south and east-west, and meeting in Palestine. Were these lines straightened out, they would have left the black community of Palestine compact and cohesive in the southwestern precinct, number two. As the lines were drawn, however, a single wedge intruded from precinct one to capture the central third of the black concentration, and another peninsula extended from precinct four to draw off the westernmost third; thus only one third was left in precinct two.[4] This dismemberment of the black community in the 1969 redistricting—along lines substantially maintained by 1973 adjustments effective January 1, 1974—had the predictable effect of debilitating the organization and decreasing the participation of black voters in county government. Plaintiff Smith was not reelected, and, of course no black has been elected to any county post since. The district court determined on this record that the County Commissioners' apportionment was designed precisely to dilute the black vote and, mindful of the trial court's peculiarly local perspective,[5] we find no reason on this record to reject that conclusion as clearly erroneous. *Cf.* Gom-

4. The division of the county here was thus quite different from that approved in Howard v. Adams County Bd. of Supervisors, *supra*.

5. *See* White v. Regester, *supra*, 412 U.S. at 769, 93 S.Ct. at 2341, 37 L.Ed.2d at 326.

illion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110.

■ The Commissioners Court sought at trial and seeks here to legitimize its apportionment by showing that its precinct lines were simply a product of an attempt primarily to equalize population between precincts in accordance with Reynolds v. Sims, *supra*, and secondarily to equalize rural road mileage among precincts.[6] It is clear, however, that the mere fact that an apportionment plan may satisfy some legitimate governmental goals does not automatically immunize it from constitutional attack on the ground that it has offended more fundamental criteria. And on this record, there is ample evidence to justify the district court's discounting the Commissioners Court's asserted rationale. As to population equalization, the evidence is uncontradicted that the Commissioners Court apportionments ignored all census data regarding population distribution, relying instead on voter registration statistics. The result was unjustified population deviation among precincts (as defined in the plan effective January 1, 1974), reaching 11% between precincts three and four. *See generally* Ely v. Klahr, 1971, 403 U.S. 108, 115 n. 7, 91 S.Ct. 1803, 1807, 29 L.Ed.2d 352, 357; Burns v. Richardson, 1966, 384 U. S. 73, 90–97, 86 S.Ct. 1286, 1295, 16 L. Ed.2d 376, 390–393.[7] By contrast, the plan adopted by the trial court clearly demonstrates the feasibility of constructing cohesive precinct lines based on 1970 census enumeration districts and recognized physical boundaries which diminish deviation to a fraction of one percent. We have noted that the equalization of county road mileage be-

tween Commissioners is a "legitimate planning objective" in reapportionment, Moore v. Leflore County Bd. of Election Comm'rs, 5 Cir. 1974, 502 F.2d at 626, [1974]; Howard v. Adams County Bd. of Supervisors, 5 Cir. 1972, 453 F.2d 455, 456. But there was no suggestion here that equalization of responsibility for rural road mileage had ever been considered important in allocating precincts in Anderson County before 1969. Rural mileage did not suddenly become a reality in 1969; more likely the rising political consciousness of the black population was 1969's significant new reality. Indeed, before 1969, little rural mileage had been entrusted to the Commissioner whose precinct included the municipal half of the county.[8] Moreover, there is no suggestion in the record that the rural precinct boundaries—which, as the district court found, followed neither census districts nor logical boundaries— could not easily have been adjusted to equalize population and road mileage without gerrymandering in Palestine. Thus obtaining equal division of rural road mileage is an insufficient ratiocination for this constitutionally impermissible districting: here it was not a reason at all—merely an excuse for perpetuating a governing body unrepresentative of the black citizenry.

We find ample support for the district court's findings of fact, and affirm its conclusion that the Commissioners Court's apportionment effective January 1, 1974, was constitutionally unacceptable.

### III

The Commissioners Court raises two basic objections to the district court's

---

6. A third consideration suggested by one witness for the Commissioners Court was to arrange the intersection of three precincts at the County Courthouse to enable three justices of the peace to use those facilities and still sit within their districts. But this required only a slight "dogleg" in precinct four, and "affected the population count very little." Appendix at 177.

7. Although Plaintiffs urge to the contrary, we pretermit, as did the trial court, consideration of whether this deviation alone suffices to establish the unconstitutionality of the Commissioners Court's apportionment.

8. Furthermore, apparently no attention was devoted to municipal road mileage in drawing the 1969 or 1974 precinct lines, although the county occasionally shared responsibility for maintaining city roads. Appendix at 186.

adoption and implementation of the plaintiffs' proposed districting plan.

■ It argues first that the district court erred in implementing its remedy simultaneously with its invalidation of the existing apportionment, because "judicial relief becomes appropriate only [if the Commissioners Court] fails to reapportion according to federal constitutional requisites in a timely fashion after having an adequate opportunity to do so," Reynolds v. Sims, 1964, 377 U.S. 533, 586, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506, 541, and because there was no opportunity even to raise objections to the feasibility of the adopted plan. We find no merit in these contentions.

The Commissioners Court was afforded an adequate opportunity to litigate the merits of the apportionment plan adopted by the district court. The complaint advised that the relief sought would include a reapportionment of Anderson County into Commissioners precincts, and at the hearing on the preliminary injunction the Commissioners Court was advised that the plaintiffs would present their proposed plan at the hearing on the merits. At the March 5, 1974, trial on the merits, the plaintiffs presented their plan, with supporting testimony, and the Commissioners Court did establish, and had an opportunity to develop, its objections to the proposed plan.

■ Moreover, the trial court did not err in adopting the plaintiffs' plan as effective for the November, 1974, election of two Anderson County Commissioners, and for the preceding May primaries. Plaintiffs had proposed a plan drawn on census enumeration districts and recognized boundaries which contained no significant population variance and restored the dismembered black community in southwest Palestine to a single precinct. The Commissioners Court neither proposed an alternative plan, suggested why a constitutionally acceptable plan could not be implemented in time for the upcoming election, nor requested additional time to prepare an alternative plan to be effective for the election. Apparently its position was that the district court should delay consideration of relief until the Commissioners Court reevaluated its precinct lines as it had originally scheduled, during its August, 1974, term. The "adequate opportunity" language in Reynolds v. Sims, *supra*, does not mean, however, that a federal court must invariably await legislative action after it declares existing apportionment unconstitutional before it directs a proper apportionment. To the contrary, as the Supreme Court established in Reynolds v. Sims, *supra*, 377 U.S. at 585, 84 S.Ct. at 1393, 12 L. Ed.2d at 541; "once a . . . legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." Moreover, in approving relief designed by a district court "faced with severe time pressures" on account of an impending election, the Supreme Court observed in Mahan v. Howell, 410 U.S. 315, 332, 93 S.Ct. 979, 989, 35 L.Ed.2d 320, 334, that

> [a]pplication of interim remedial techniques in voting rights cases has largely been left to the district courts. Reynolds v. Sims, *supra*, 377 U.S. at 585, 84 S.Ct., at 1393, 1394 [12 L.Ed. 2d at 541]. The courts are bound to apply equitable considerations and in Reynolds it was stated that "[i]n awarding or withholding immediate relief, a court is entitled to consider the proximity of a forthcoming election . . ." Ibid.

We conclude that, given the compelling constitutional infirmities in the existing apportionment scheme, the district court did not err in adopting the only plan offered for implementation in time to resume orderly progress toward the November, 1974, election. *See, e. g.*, Mahan v. Howell, *supra;* Connor v. Johnson, 1971, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268; Turner v. McKeithen, *supra*, 490 F.2d at 196–198; Graves v.

Barnes, W.D.Tex.1972 (3 judge), 343 F. Supp. 704, 736, aff'd in part sub nom. White v. Regester, *supra*; Graves v. Barnes, W.D.Tex.1974 (3 judge), 378 F. Supp. 640 at 663.

■ The Commissioners Court next attacks the substance of the reapportionment plan adopted by the trial court on the ground that it results in one precinct's containing a 53% black population. The district court's plan, in addition to respecting the integrity of the black community in southwest Palestine, follows established census enumeration lines [9] and recognized physical boundaries, including Palestine city limits, and reduces population variance among precincts to less than one percent, according to 1970 census figures. The Commissioners Court, of course, submitted no alternatives. Its alternative here is essentially that the trial court, after correctly determining that the Commissioners Court had impermissibly gerrymandered so as to dilute the vote of a racial group, should have rejected the plaintiffs' proposed reapportionment and designed a remedy which would accomplish the same dilution as the original invalid apportionment. We find the able district court's plan a proper exercise of its equity powers. *See* Zimmer v. McKeithen, *supra*, 485 F.2d at 1308.

### IV

■ Defendant Gragg, the Republican Party Chairman for Anderson County, argues as a final specification of error that the trial court erred in ordering the Chairpersons of the Anderson County Republican and Democratic parties to postpone certain filing deadlines. The County Democratic Party Chairwoman does not appeal.[10] These defendants had

no substantive interest in the reapportionment itself which would make them necessary parties to the reapportionment order. The trial court apparently accepted the plaintiffs' argument that the party chairpersons were properly subject to the postponement order, pursuant to Fed.R.Civ.Proc. 71, if not otherwise. We cannot consider the issue now, however, because the filing deadlines as postponed and the primary election date have already passed, and the order did not apply to future elections; the issue is moot as between Gragg and these plaintiffs. *See, e. g.*, DeFunis v. Odegaard, 1974, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164; Hollon v. Mathis Independent School Dist., 5 Cir. 1974, 491 F. 2d 92; United States Servicemen's Fund v. Killeen Independent School Dist., 5 Cir. 1974, 489 F.2d 693. *See also* Gooden v. Mississippi State Univ., 5 Cir. 1974, 499 F.2d 441 (citing recent cases).

### V

In sum, the constitutional geometrics of representative districting do not add up to minimizing black electoral clout. Demographic manipulation to accomplish racial dilution, like many other ethnic relics, has been constitutionally interred.

The district court's order is affirmed insofar as it binds the Anderson County Commissioners Court and County Judge; the appeal of the Anderson County Republican Party Chairman is dismissed as moot, and the order of postponement, insofar as it applied to the County Republican Party Chairman is accordingly vacated.

GODBOLD, Circuit Judge.

I concur in the result.

---

9. Anderson County is divided into 37 census enumeration districts. All of these districts are compact except for numbers 13 and 19, both of which consist of scattered and unattached but discreet pockets around the City of Palestine. All of census enumeration district 19 is included in one precinct. District 13 is divided between two precincts, but its independent components are each wholly within one precinct or the other.

10. The Commissioners Court's brief raises this issue, presumably for the benefit of co-appellant Gragg, who has simply adopted the Commissioners Court brief as his own. The order to postpone filing dates did not run against the Commissioners Court; thus they have no standing to appeal it.