Charles PERRY et al.,
Plaintiffs-Appellees,

v.

CITY OF OPELOUSAS et al.,
Defendants-Appellees,

v.

James HARRIS et al., Intervenors-Appellants, United States of America, Intervenor.

No. 74–2455.

United States Court of Appeals,
Fifth Circuit.

July 7, 1975.

Marion Overton White, Joshua J. Pitre, Opelousas, La., for intervenors-appellants.

James P. Doherty, Leon S. Haas, Jr., Opelousas, La., for Perry and others.

Richard B. Millspaugh, Opelousas, La., for Hudson.

Gerald W. Jones, Civ. Rights Div., Voting & Public Accommodations, U. S. Dept. of Justice, Washington, D. C., for other interested parties.

Before GOLDBERG and RONEY, Circuit Judges, and GROOMS, District Judge.

GOLDBERG, Circuit Judge:

This case presents questions almost identical to the ones we have already encountered today in Wallace v. House, 5 Cir. 1975, 515 F.2d 619. We are again asked to decide the constitutionality of various aldermanic election schemes in a Louisiana municipality. Here, as in *Wallace,* the district court found that the traditional all-at-large election plan substantially diluted the voting rights of the black citizens of the city. This case differs from *Wallace* only in that the plan approved by the district judge here included five single-member and one at-large aldermanic districts. We believe that the district court's resolution of this difficult issue is fully compatible with the principles followed in *Wallace* and we affirm the judgment on the basis of that decision.

I

Opelousas, Louisiana, is a city of about 20,200 inhabitants, 9,900 (49%) of whom are white and 10,300 (51%) of whom are black. The history of racial segregation and other discrimination in Opelousas differs in no significant respect from that found in many other Southern communities, and the record shows that the municipal services available to the black citizens of the City have always been greatly inferior to those enjoyed by the local white population. One of the reasons for this inexcusable neglect by the City of the interests of the majority of its inhabitants is that the traditional all-at-large aldermanic election scheme has operated to deprive Opelousas blacks of any meaningful representation on the Board of Aldermen. Although blacks have frequently run for public office in Opelousas in the last decade, none have ever been elected. The reason for this extraordinarily bad record is that although blacks comprise a slight majority of the City's total population, a majority of the registered voters are white, and the all-at-large election plan has combined with racially polarized voting patterns to produce all-white Boards of Aldermen which have been able to ignore the interests of their black constituents.[1]

1. The traditional plan in Opelousas differs from that in Ferriday only in the requirement that one Opelousas alderman must live in each of the City's four wards, while the fifth may live anywhere within the corporate limits. Because there are white neighborhoods in each of the four wards, this requirement has had no practical effect on the level of black representation in municipal government.

On November 12, 1973, plaintiffs brought this action in federal district court, challenging the all-at-large aldermanic scheme; on December 15, 1975, a group of black citizens [plaintiffs-intervenors] intervened in the lawsuit on the ground that plaintiffs did not adequately represent the interests of Opelousas blacks; and on January 14, 1973, the Attorney General of the United States intervened expressing an interest in the case pursuant to the Voting Rights Act, 42 U.S.C. § 1973c. The parties all agreed that no trial was necessary and based their particular arguments on stipulations, affidavits, depositions, memoranda and a total of fifteen reapportionment plans. On May 10, 1974, the district court concluded that one of plaintiffs' plans which provided for five single-member aldermanic districts would best ensure the efficacy of the suffrage for every citizen of Opelousas and adopted that plan, as modified to include a sixth at-large aldermanic district, in accordance with the longstanding Louisiana policy favoring such districts. 375 F.Supp. 1170. Both plaintiffs and plaintiffs-intervenors appeal the inclusion of the one at-large place in the plan; plaintiffs-intervenors also charge that the boundaries of the five single-member districts are gerrymandered so as to dilute black voting strength. Neither the City nor the Attorney General has perfected an appeal or responded to the arguments made before us by plaintiffs and plaintiffs-intervenors.

## II

■ There can be no doubt that the all-at-large electoral system has unconstitutionally diluted the voting rights of Opelousas blacks. The long history of racial discrimination, the City's culpable neglect of black interests, Louisiana's anti-single shot and majority vote requirements and the local racially-polarized voting patterns all support the district court's conclusion that these factors, when combined with the white voting majority, have made the multi-member district a certain instrument of dilution. The City itself acknowledged the illegality of the old plan at the very beginning of this lawsuit. The problem here is whether the district court properly adopted a mixed election scheme.

■ The district court's plan certainly meets the population variance requirements of Mahan v. Howell, 1973, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320, for the maximum deviation among the five single-member districts is 6.2% and the average deviation is 2.1%.[2] As for the practical politics of the situation, the all-single-member plan would probably produce three white aldermen and two black aldermen. Since the slim white voting majority in Opelousas would most likely return a white alderman for the at-large seat, plaintiffs and plaintiffs-intervenors have the burden of demonstrating that although a three-two white-black division of the Board of Aldermen is constitutional, a four-two arrangement would be unconstitutional. There was no evidence presented below to support this contention. Our discussion in *Wallace* of the effects of a single at-large place as opposed to the effects of an all-at-large election applies to the facts of this case as well; we do not see that the district court's mixed plan will

---

2. The plaintiffs' plan that was adopted by the district court, as modified by the addition of one at-large aldermanic position, is as follows:

| Council District | Total Population | Deviation from Mean Average of 4,049 | Proportion of District Population White | Black |
|---|---|---|---|---|
| A | 4,217 | +4.1% | 51% | 49% |
| B | 4,099 | +1.2% | 34% | 66% |
| C | 3,965 | −2.1% | 61% | 39% |
| D | 4,000 | −1.2% | 67% | 33% |
| E | 3,963 | −2.1% | 34% | 66% |
| At-large | 20,244 | — | 49% | 51% |

deprive Opelousas blacks of fair representation on the Board of Aldermen.

Although the district court was justified in refusing to accept any of the City's plans (each of which included one at-large place) because of their uniformly impermissible district population variances, the court very properly accommodated the longstanding local and state preference for at-large districts by including one such position in its plan. We agree with the able district judge that in the specific circumstances of this case, "any alderman who hopes to be elected at-large would have to campaign for and secure the trust and support of both the black and white community." 375 F.Supp. at 1173. Such deference to the legislative preference not only evidences proper judicial restraint, but also makes a great deal of sense in this particular case.

Plaintiffs-intervenors allege that the five single-member districts illegally gerrymander a black neighborhood in central Opelousas. The district court found the five districts proposed by plaintiffs to be "cohesive and as uniform as practicably possible" and in no way calculated or capable of fragmenting the black vote. 375 F.Supp. at 1172. Plaintiffs-intervenors' contentions to the contrary are innocent of any support in the record and we conclude that no gerrymander exists here.

Finally, plaintiffs-intervenors complain that plaintiffs improperly refused to allow them to examine various proposed reapportionment plans, including the one finally adopted by the district court. The rancor displayed in the opposing briefs with respect to this point is inversely proportional to the importance of the dispute. There is no evidence that plaintiffs improperly deprived plaintiffs-intervenors of a fair opportunity to examine the various plans, and the district court correctly refused to allow plaintiffs-intervenors' allegations to af-

fect the substantive relief granted to plaintiffs in this case.

The order of the district court is Affirmed.