**J. HENRY SCHROEDER BANKING CORP., Plaintiff-Appellee,**

v.

**W. Michael BLUMENTHAL, Secretary of the Treasury of the United States, et al., Defendants-Appellees-Cross-Appellants.**

**BEN R. HENDRIX TRADING CO., INC., Plaintiff-Appellant-Cross-Appellee,**

v.

**J. HENRY SCHROEDER BANKING CORP. et al., Defendants-Appellees.**

No. 74–2586.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1977.

Rehearing and Rehearing En Banc Denied Dec. 13, 1977.

---

Benjamin S. Hardy, Brownsville, Tex., Glenn L. Morgan, New Orleans, La., for plaintiff-appellant.

Asa V. Bland, Jr., Charles C. Murray, McAllen, Tex., Russell R. Barron, for Schroeder Banking Corp. et al.

James R. Clopton, McAllen, Tex., for V. Guerra.

Ralph L. Alexander, Edinburg, Tex., for Alamo Express, Inc., et al.

Edward B. McDonough, Jr., U. S. Atty., William L. Bowers, Jr., James R. Gough, Jr., Asst. U. S. Attys., Houston, Tex., for Secy. of Treasury.

Before BROWN, Chief Judge, HILL and FAY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This lawsuit involves goods, principally liquor, in Customs' bond which were seized from the bonded warehouses in two Texas counties. Due to the voluntary filing of an arrangement under Chapter XI of the Bankruptcy Act, followed by a judicial sale to which all parties consented, we hold that the issue of an earlier-challenged seizure of the liquor is now moot.

### Simon Says "No"

This dispute arose from a claim by the Henry J. Schroeder Banking Corporation (Schroeder), against Ben R. Hendrix Trading Co., Inc. (Hendrix), an import/export dealer. Since 1968 Schroeder had made loans to Hendrix to finance his inventory. The loans were secured by a lien on the assets. In 1973 when Hendrix was behind on the payment of a loan, Schroeder filed for foreclosure of the lien and a money judgment for the outstanding loan. The state court ordered sequestration of all the assets located either in Hendrix's own warehouse or in the warehouse under Customs' bond.

Subsequently a now controversial compromise agreement was entered into by Schroeder and Hendrix.[1] Under the agreement Hendrix admitted the amount of the debt and agreed to a judgment being entered against him. A sale of the assets was arranged by Schroeder. Hendrix, however, could sell the goods if he could find a buyer willing to pay more than Schroeder's buyer. An option clause gave Schroeder the right to sell the goods if Hendrix attempted to otherwise dispose of the property. Contending that Hendrix did just that, Schroeder obtained orders for a public sale of the liquor by the sheriff. Customs, speaking through Secretary of the Treasury, William

---

1. Hendrix claims that he was not bound by the compromise agreement since the person who signed it was not an authorized agent capable of binding the company. That issue, although not resolved earlier, is now also moot.

Simon, objected and asked for reformed orders of sale. Although two sheriff's sales were attempted, Customs refused to release the goods either to the sheriff or to Hendrix. This federal suit ensued.

### Federal Prohibition Revisited

Two lawsuits were filed by the parties in federal court on the same day. Both sought declaratory judgments. Hendrix sued Schroeder, the Customs officials, and the Secretary of the Treasury, seeking to have the attempted sheriff's sale and the underlying state court order declared void.[2] Schroeder sued Hendrix and essentially the same other officials contending that the attempted seizure and sale were not in violation of federal law. Schroeder also sought mandamus to compel Customs to release the liquor and an injunction to prevent Hendrix from taking the goods from the warehouses. Customs counterclaimed by filing a bill in the nature of an interpleader, asking that if the federal court entertained the case, they be released from liability upon compliance with either the state or federal process, as found appropriate by the federal court.

The Federal District Court held that the state court could adjudicate the ownership of the goods in question. The Court held that while the state court could direct compliance with Customs' regulations to effect a transfer of the title documents in question, its attempt to do so was void due to its failure to include the warehousemen in its order. The case was dismissed without prejudice to further pursue these matters in the state court or under Customs' laws and regulations. A supplemental order issued by the District Court held that Customs would be discharged from further liability upon compliance with properly executed warehouse receipts, whether done voluntarily or in response to orders of the state court.

### Mootness In The Moonshine

Hendrix appealed from these orders, but after the instant appeal was filed Hendrix filed a Bankruptcy Chapter XI reorganization proceeding to work out an arrangement whereby control of the assets was maintained by him as a debtor in possession. During the course of the Chapter XI proceedings, all parties moved to sell the liquor. Hendrix sought privately to sell it as a debtor in possession and the creditors sought to have a trustee handle the transaction. The Bankruptcy Judge appointed a trustee who sold the merchandise and now holds the proceeds subject to the orders of the Bankruptcy Court. The appropriate Customs and title documents were executed, Customs officials acted in accordance with these instruments, and the goods which were the subject of the controversy were delivered to the buyers.

Both Customs officials and Hendrix recognized that the Bankruptcy Court had power to order such a sale. Indeed, as debtor, Hendrix had enough power and control over the goods to surrender them to the Bankruptcy Court. Thereafter the goods were not subject to any restraint by state officials and were subject only to payment or security for Customs' duties. Hendrix owns no other merchandise or liquor under Customs' bond and is no longer actively involved in importing and exporting bonded merchandise.

The controversy that gave rise to the actions for declaratory judgments by both Hendrix and Schroeder was whether control of the liquor would be with Hendrix or with the state court officers and those who purchased it at the aborted judicial sales. Since the liquor has now been sold in an admittedly valid manner and is in the hands of third parties, none of the parties to the controversy below can be said to have any right of control over the goods. Thus, there is no longer any case or controversy. Hen-

2. Hendrix contended that 19 CFR 19.6(c), note 11, which provides that:

Imported goods in bonded warehouses are exempt from taxation or judicial process of any State or subdivision thereof,

and the General Agreement on Tariffs and Trade (GATT), prevent a state court from ordering a sale of goods under Customs' bond pursuant to an *in personam* foreclosure suit on a secured note covering the warehoused goods.

drix owns no other merchandise in bond and is no longer in the business of importing and exporting bonded merchandise, so there is no likelihood that a similar controversy might arise in the future.

The Supreme Court established the starting point for determining mootness in *De-Funis v. Odegaard*, 1974, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164, 168–69. There, it said, the criterion for determining mootness "is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" (Cites omitted).

This Court has before it Hendrix, Schroeder, and various Customs officials. Since the Customs' regulations have been met and Customs has agreed to the sale there is no decision that we could now reach on the issue before us that could affect Customs. Although Hendrix and Schroeder still have some interest in the Bankruptcy Court's disposition of the proceeds from the sale, there is no longer any live dispute between them over who has the right to possession and control of the inventory since by their consensual actions they both impliedly now agree that unquestionably the third party who purchased it at the sale is the only one with such a right. The issues still alive in this case—disposition of the proceeds, amount of the debt still owed, and the propriety of the prejudgment seizure—will be resolved by the Bankruptcy Judge in the first instance. It would be premature for this Court to dispose of those issues here.

Under the authority of prior Fifth Circuit decisions, this case has become moot due to the admittedly valid sale of the assets by the Bankruptcy Court in a proceeding voluntarily initiated by Hendrix, a sale to which all parties involved in the appeal consented. *Southern Bell Tel. & Tel. Co. v. United States*, 5 Cir., 1976, 541 F.2d 1151; *Barron v. Bellairs*, 5 Cir., 1974, 496 F.2d 1187; *National Lawyers Guild v. Board of Regents*, 5 Cir., 1974, 490 F.2d 97; *Merkey v. Board of Regents*, 5 Cir., 1974, 493 F.2d 790; *United States Servicemen's Fund v. Killeen Independent School District*, 5 Cir., 1974, 489 F.2d 693; *Gooden v. Mississippi State University*, 5 Cir., 1974, 499 F.2d 441. The case is therefore remanded to the District Court with instructions to dismiss it as moot under our uniform precedents.

REMANDED.