Harry Landau Chairman Charter Review Commission Lauderdale Lakes
QUESTION:
Does a municipality possess the power to provide for the election of members of its legislative governing body from single-member districts?
SUMMARY:
A municipal charter may be amended so as to provide for the election of city commissioners from single-member districts, but only after approval thereof by a majority of the electors of the municipality voting thereon, regardless of whether such amendment is proposed by ordinance or by petition. If such an amendment is duly adopted and the charter duly revised in accordance therewith, the city commissioners' district lines must be drawn in accordance with the boundaries of the county precincts located in the municipality.
You state that the Charter Review Commission of the City of Lauderdale Lakes has decided to discuss and recommend single-member districting for the election of members of the city's governing body. You further state that the aforesaid charter review commission desires an opinion `in regard to the legality, the efficacy and the constitutional [sic] statutes that cover single district apportionment on the local level by legislation or by statutes permitting voter participation by referendum.'
It is not the province of this office, but that of the judiciary, to determine the `legality' or constitutionality of duly enacted legislation under the United States or Florida Constitutions. Attorney General Opinion 075-195. Therefore, with regard to that aspect of your request, I must respectfully refrain from giving an opinion. With respect to the political `efficacy' of single-member districts in connection with the election of members of the legislative governing body of a municipality, that is not a matter requiring a legal opinion. However, should a municipality consider adopting or retaining a multimember or other at-large scheme, it would be well advised to first consider whether such a scheme would operate to `minimize or cancel out the relative voting strength of racial or political elements of the voting population.' Fortson v. Dorsey, 379 U.S. 433, 439 (1965). While this standard is to be met by all types of districting plans, multimember and other at-large districting schemes have `[t]he particular vice' of minimizing `minority representation even at the lowest political levels in a way that could not occur if single-member districts existed in their stead.' Wallace v. House,515 F.2d 619, 629 (5th Cir. 1975), vacated on other grounds,425 U.S. 947 (1976). Indicia of voting minimization rendering at-large schemes unconstitutional at all levels of government include the following:
 (1) A history of governmental neglect of the racial or political element. E.g., Whitcomb v. Chavis, 403 U.S. 124, 155 (1971); Parnell v. Rapides Parish School Bd., 563 F.2d 180, 184 (5th Cir. 1977).
 (2) A relatively small number of element legislators historically elected. E.g., Turner v. McKeithen, 490 F.2d 191, 195 (5th Cir. 1973); Paige v. Gray, 437 F. Supp. 137, 158
(M.D.Ga. 1977).
 (3) Use of the place rule (i.e., requiring each candidate in an at-large election to designate a particular seat for which he or she is running). E.g., White v. Regester, 412 U.S. 755, 766 (1973); Yelverton v. Driggers, 370 F. Supp. 612, 617, 619
(M.D.Ala. 1974).
 (4) A majority vote requirement in primary elections. E.g., Kirksey v. Board of Supervisors of Hinds County, 554 F.2d 139, 143 (5th Cir.), cert. denied, 98 S.Ct. 512 (1977); Perry v. City of Opelousas, 515 F.2d 639, 641 (5th Cir. 1975).
 (5) Party obstacles to participation. E.g., Turner v. McKeithen, 490 F.2d 191, 194 (5th Cir. 1973); United States v. Democratic Executive Committee, 288 F. Supp. 943, 946-48
(M.D.Ala. 1968).
 (6) Lack of subdistrict residency requirements. E.g., Whitcomb v. Chavis, 403 U.S. 124, 143-44 (1971); Burns v. Richardson, 384 U.S. 73, 88 (1966).
 (7) A history of official discrimination bearing on effective exercise of the franchise. E.g., Bradas v. Rapides Parish Police Jury, 508 F.2d 1109, 1112 (5th Cir. 1975); Robinson v. Commissioner's Court, 505 F.2d 674, 679 (5th Cir. 1974).
Given the tendency of at-large electoral schemes to unconstitutionally minimize the vote of racial or political elements of the population, and `[b]ecause the practice of multimember districting can contribute to voter confusion [and] make legislative representatives more remote from their constituents,' the Supreme Court of the United States has expressed a preference for single-member district plans. Connor v. Finch, 431 U.S. 407, 415 (1977). This preference has been explained by the Fifth Circuit Court of Appeals in the case of Wallace v. House, 538 F.2d 1138, 1144 (5th Cir. 1976), as follows:
 The general preference for single-member district plans is founded on a judgment that the weaknesses of multi-member or at-large plans tend to impair fair representation and impede access to the political process.
The foregoing analysis and citation of authorities should be of assistance in making your decision as to the adoption of single-member districts.
As to the specific question presented by your inquiry, I have recently given my opinion that the governing body of a municipality may propose such an amendment to the municipal charter by ordinance and submit same to the electors of the municipality for approval pursuant to s. 166.031(1), F. S. 1977. Attorney General Opinion 078-32. Alternatively, such a proposed amendment of the municipal charter may be submitted to a vote of the electors of the municipality by a petition to that effect signed by 10 percent of the registered electors of the municipality. Section 166.031(1). In either case — whether the charter amendment is proposed by ordinance or by petition, as aforesaid — such amendment must be submitted to a vote of the electors of the municipality. The reason for this was given in AGO 078-32 as follows:
 Section 166.021(4), F. S. 1977, in pertinent part specifies that no changes in a special law or municipal charter are permitted with respect to `the terms of elected [municipal] officers and the manner of their election' (Emphasis supplied.) without the approval by referendum of the electors of the municipality as provided in s. 166.031, F. S., relating to charter amendments. . . . It is clear that a change . . . to the election of city commissioners from single-member districts, which is the substance of the proposal outlined in your letter, is a change in the method, way, means, plan, design or manner in which city commissioners are elected. . . . Therefore, the proposal you described is subject to s. 166.021(4), F. S. 1977, so that before the city charter may be amended in this fashion, the proposal you described must be submitted to a referendum of the electors of the city pursuant to s. 166.031, F S.
Although AGO 078-32 was primarily directed to the case of an amendment of a municipal charter to allow or require single-member districting when such an amendment is proposed by ordinance of the governing body of the municipality, the above-quoted reasoning applies with equal force to such an amendment proposed by petition and signed by 10 percent of the electors of the municipality.
However, should such a proposed amendment of the city charter be adopted by a majority of the electors of the municipality voting in the referendum thereon and take effect pursuant to s.166.031(2), F. S. 1977, the municipality would be limited in its power to implement single-member districting. As was stated in AGO 078-32, the municipality would then have to
 . . . redistrict in such a manner as to align the boundaries of its proposed city commissioners' districts with the lines or geographic boundaries of the county precincts within the municipality and with the boundaries of the municipality. . . . Otherwise, the city will first have to seek the assistance of the county supervisor of elections in recommending to the board of county commissioners any feasible changes in the boundaries of county precincts lying either wholly within or partly within and partly without the city limits.
See s. 98.031, F. S. 1977, granting the board of county commissioners limited authority to `alter or create' county precincts upon the recommendation of and approval given by the county supervisor of elections, and s. 98.091, F. S. 1977, vesting the board of county commissioners with the discretionary authority to delineate the boundaries of county precincts in any municipality located within said county in conformity with the boundaries of such municipality, with the concurrence of the county supervisor of elections, and subject to the concurrence of the governing body of such municipality.
As so qualified, your question is answered in the affirmative.
Prepared by: Sharyn L. Smith, Assistant Attorney General
Dennis J. Wall Legal Research Assistant